[No. 4713–II.   Division Two.   January 18, 1982.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent,* v. TACOMA YELLOW CAB COMPANY, ET AL, *Appellants.*

*Joseph H. Gordon, Jr.,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Robert G. Swenson, Assistant,* for respondent.

PETRIE, J.—Two employers, Tacoma Yellow Cab Company and Oliver Taxi and Ambulance Service, appeal from a judgment reinstating an order of the Department of Labor and Industries which directed those employers to report the payroll and pay premiums on behalf of "lease drivers" to whom the employers leased their taxicabs. We affirm the judgment; but, first, we review a jurisdictional issue presented by the appeal.

On January 6, 1977, the department ordered the employers to pay industrial insurance premiums on behalf of persons who lease taxicabs from the employers on a "day–to-day" basis. The employers appealed that order to the Board of Industrial Insurance Appeals. Following hearings, a hearing examiner employed by the board prepared and executed a document dated April 6, 1978 entitled Proposed Decision and Order which bears on its face a board stamp indicating copies were mailed on April 10, 1978 to the two employers, their counsel, and the Office of Attorney General; but, contrary to provisions of RCW 51.52.104, there is no indication that a copy was mailed to the department. The examiner concluded that the relationship of the employers to their "lease drivers" was that of lessor and lessee and not within the mandate of RCW Title 51.

Accordingly, the document declared that the department's 1977 order was reversed.

A copy of the examiner's proposed order was received by the Office of Attorney General, counsel for the department, on April 11; and on April 26, the department, through its counsel, mailed a request for extension of time for filing a petition for review to the board. This request was evidently lost in the mail and was not received by the board. Subsequent events are summarized by the trial court's unchallenged finding as follows:

> When the Board did not respond to plaintiff's [department's] request, plaintiff diligently pursued the matter and upon learning of the loss of the original application, filed on May 4, 1978, a second application with a copy of the original application and with uncontroverted proof of timely mailing of the original application and subsequently filed the Petition For Review, all with the permission of the Board of Industrial Insurance Appeals and all occurring prior to any action being taken by the full Board.

Before the board considered the department's petition, the employers challenged the jurisdiction of the board to review the cause on its merits. The employers' contention, as communicated to the board (and as argued in superior court and in this court) is that RCW 51.52.104 mandates, as a prerequisite to judicial review, a party's request for extension of time in which to file a petition for review of an examiner's order be filed with the board within 20 days "from the date of communication of the proposed decision and order to the parties or their attorneys of record".[1]

---

[1]RCW 51.52.104 provides:

"After all evidence has been presented at hearings conducted by a hearing examiner, who shall be an active member of the Washington state bar association, the hearing examiner shall enter a proposed or recommended decision and order which shall be in writing and shall contain findings and conclusions as to each contested issue of fact and law, as well as the order based thereon. The hearing examiner shall file the original of the proposed decision and order, signed by him, with the board, and copies thereof shall be mailed by the board to each party to the appeal and to his attorney of record. Within twenty days, or such further period as the board may allow on written application of a party, filed within said

Because the department's application for extension of time was not filed until May 4, and the examiner's proposed order was communicated to the Attorney General on April 11, the employers contend the application was filed 3 days later than the statute allows. Accordingly, the employers assert, the department's right to appeal is barred by statute.

Contrary to the employers' contention, the board declared in its order dated June 5, 1978:

[W]e have consistently taken the position that the event which completely terminates the Board's jurisdiction to consider a case, following entry of a hearing examiner's Proposed Decision and Order, is an affirmative action which we must take, namely, the entry of an official Board Order adopting the Proposed Decision and Order, thereby making it the Board's final order. Such affirmative Board action was not taken here, and therefore the Petition for Review can and should be considered on its merits.

Nevertheless, after considering the department's petition for review on the merits, the board denied the petition because it concluded the hearing examiner had "made the proper disposition on the merits." The board's order denying the petition bears the board's stamp indicating copies were mailed to the two employers, their attorney of record, *the department,* and its attorney of record, on June 9. On the department's appeal to superior court, the board's order was reversed; and the employers now appeal to this court.

Resolution of the jurisdictional issue requires that we first examine the nature and function of the Board of

---

twenty days from the date of communication of the proposed decision and order to the parties or their attorneys of record, any party may file with the board a written petition for review of the same. Such petition for review shall set forth in detail the grounds therefor and the party or parties filing the same shall be deemed to have waived all objections or irregularities not specifically set forth therein.

"In the event no petition for review is filed as provided herein by any party, the proposed decision and order of the hearing examiner shall be adopted by the board and become the decision and order of the board, and no appeal may be taken therefrom to the courts."

Industrial Insurance Appeals. It is an independent appellate body—a quasi–judicial body—which hears and determines appeals from orders of the Department of Labor and Industries. *Kaiser Aluminum & Chem. Corp. v. Department of Labor & Indus.*, 45 Wn.2d 745, 277 P.2d 742 (1954). Its decisions are based upon de novo hearings, conducted either before the members of the board or before an examiner appointed by and acting for the board. *Kaiser.* Though an examiner employee has authority to prepare a proposed decision and order, copies of which are subsequently distributed to the parties to the appeal and their counsel, "the board may not delegate to any other person its duties of interpreting the testimony and making the final decision and order on appeal cases." RCW 51.52.020.

█ Thus, in the case at bench, when the department's admittedly statutorily late petition to review the examiner's order came before the board, the board had two alternative courses of action: (1) it could have resolved the matter by asserting (as provided by RCW 51.52.104) that "no petition for review is filed as provided herein by any party" and thereupon have adopted the examiner's proposed order as the board's order; or (2) it could have determined, as it apparently did, that, notwithstanding the technically late petition, the substance of the appeal warranted board review. Had the board chosen the first alternative, then the department's right of appeal would have been precluded by statute because "no appeal may be taken therefrom to the courts." RCW 51.52.104. Because the board chose the second alternative, the latter portion of RCW 51.52.104 does not apply.

In effect, the board necessarily concluded: (1) all matters pending before the board, from the moment an aggrieved party files an appeal of a departmental order until a final board order is promulgated, properly lie within the bosom of the board for appropriate action; (2) hearing examiners are subordinate employees who have no jurisdictional authority independent of the board's authority; (3) the board cannot delegate to others its duty to make a final

decision and issue an order based thereon; and (4) accordingly, we (the board) choose to review the merits of this appeal. In making that choice, the board acted well within its statutory authority.

RCW 51.52.104 mandates that the board mail copies of an examiner's proposed order "to each party to the appeal and to his attorney of record." The department is a party to the appeal, but the record indicates that no copy was ever mailed by the board to the department. Presumably, therefore, no copy of the examiner's order was ever communicated to the department by the board. As last amended in 1971 (apparently in partial response to *Seese v. Department of Labor & Indus.*, 73 Wn.2d 213, 437 P.2d 694 (1968)), the same statute grants the board discretionary authority to extend the time limits for a party to file a petition to review an examiner's order. Although not entirely free from ambiguity, the statute also appears to limit the authority of the board to grant an extension only if application is made therefor within 20 days "from the date of communication of the proposed decision and order to the parties or their attorneys of record". Aside from the fact that no copy of the examiner's order was ever mailed to the department, the board apparently considered that it had not lost jurisdiction to consider the merits of the appeal by the mere passage of more than 20 days after receipt of the proposed order by the department's counsel. We agree. Any other interpretation of that statute would mean that when the 20 days had expired, the board would have to rubber stamp the actions of one of its employees.

In *Seese*, the board (under the pre–1971 version of the statute) had taken the view, as enunciated by its secretary, that "since no exceptions had been taken within 20 days, the board *could not consider* exceptions filed with it thereafter." (Footnote omitted. Italics ours.) *Seese*, at 215. The court held that position was incorrect by declaring: "We are of the opinion, however, that the matter had not ended until the board took official action either to grant an extension or to deny it." *Seese*, at 218.

In the case at bench, the board took the contrary position and asserted, instead, that it never lost jurisdiction to act upon a petition to review a decision of one of its employees until it (the board) made and entered its final decision. In short, we hold that RCW 51.52.104, even as amended in 1971, does not deprive the board of its nondelegable statutory duty "of interpreting the testimony and making the final decision and order on [all] appeal cases." RCW 51.52-.020.

We turn then to the substantive merits. The controlling statute is RCW 51.08.180 as follows:

"Worker" means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also every person in this state who is engaged in the employment of or *who is working under an independent contract, the essence of which is his or her personal labor* for an employer under this title, whether by way of manual labor or otherwise, in the course of his or her employment.

(Italics ours.)

The employers' "lease drivers" work under and pursuant to the terms of an independent contract which each driver executes with either of the two taxi companies who are parties to this appeal. The only real question is whether the essence of each driver's work is "his or her personal labor". RCW 51.08.180.

Under the terms of the "day–to–day" leases the driver is free to utilize the taxicab in any legal manner and for any legal purpose subject only to the proviso that:

The taxi cab shall not be operated by any person except by the Lessee or his regular employees. And such employees shall be duly qualified and licensed to drive and over the age of 25 years.

The rental of the taxicab is a flat fee plus a predetermined rate per mile of use. For those reasons, the taxicab companies contend they are merely engaged in the business of leasing vehicles for an agreed fee and should not be required to pay industrial insurance premiums for workers

compensation coverage for their lessees. That argument evades the real issue, *i.e.,* whether, when each lessee is engaged in operating the taxi as a taxi for hire, is he, in the words of the statute, "working under an independent contract, the essence of which is his or her personal labor for an employer".

█ Under a somewhat different but, nevertheless, appropriately analogous setting, we are reminded not to observe symbolic or meaningless acts. Rather, we are urged, in reviewing statutes which confer benefits, to "look at the realities of the situation." *Ancheta v. Daly,* 77 Wn.2d 255, 263, 461 P.2d 531 (1969). The realities are simply that the *essence* of the independent lease contract is to provide a method to place taxis and drivers on the city streets of Tacoma to carry passengers at rates which are established by local ordinances. The meters in the taxis are calibrated to conform with the maximum rates authorized by ordinance; and those ordinance maximums are based, in substantial part, on an established rate per mile traveled. The City of Tacoma has a no-cruising ordinance; and, basically, the two methods for obtaining riders are: (1) to wait at a cab stand leased by the lessors from the city, or (2) to receive dispatch calls over a lessor-operated radio dispatch system. As indicated by lessors' witnesses, before a prospective lessee is permitted to lease a taxi, he must present a "clean record" free of driving accidents for 3 years and a current City of Tacoma chauffeur's license.

█ It seems eminently clear that the "lease drivers" perform functions essentially the same as those few employees of the lessor companies who regularly drive taxis as employees. Under that fact pattern, the essence of the lease contract is the personal labor of the lessees. They contribute nothing to the contract except their personal labor. In those singularly rare occasions (meaningless in the face of the realities of the situation) when a driver might choose to take his family on a picnic or use the taxi for purposes other than as a taxi for hire, the hours reportable for industrial insurance premium purposes can be modified

as reflecting that type of use.

In all the definitive case law interpreting the "personal labor" aspect of RCW 51.08.180, the court has insisted that in order to avoid the categorization of "workman" (or more recently as "worker"), the person whose labor is being utilized must of necessity supply to the work effort some machinery or equipment (as distinguished from the usual hand–tools). *See White v. Department of Labor & Indus.*, 48 Wn.2d 470, 294 P.2d 650 (1956), and cases cited therein.

We conclude, therefore, that these "lease drivers" are "workers" within the meaning of the workers compensation act.

Judgment affirmed.

PEARSON, J., concurs.

PETRICH, A.C.J. (dissenting)—I dissent from that portion of the majority's opinion which holds that the board had jurisdiction to review the case on the merits where no petition for review was filed within 20 days of the proposed decision. It seems obvious to me that the legislature's response to *Seese v. Department of Labor & Indus.*, 73 Wn.2d 213, 437 P.2d 694 (1968), precludes the board from retaining any jurisdiction. In *Seese,* the court was faced with a situation where the petition had not been filed within the 20 days, but there then existed no limitation as to when or how the board may allow an additional period to file such a petition. The court ruled that the board could retain jurisdiction in absence of a clear mandate to the contrary from the legislature. In my view the legislature in 1971 issued this clear mandate by permitting the board to allow an extended period only when there was a written application for such extension filed within 20 days of the proposed decision. RCW 51.52.104.

It may be argued, as the majority claims, that the statute is not entirely free from ambiguity. If so, an appropriate rule by the board, delineating when in its judgment its jurisdiction would be relinquished, might be entitled to

126

some consideration by the court. However, the board's rules in WAC 263-12-140 and 263-12-145 are essentially the same as RCW 51.52.104.

The board's declaration of June 5, 1978, set forth in the majority opinion, seems to be within the definition of a rule defined in the administrative procedure act in RCW 34.04-.010. The act defines a rule to mean "any agency order, directive, or regulation of general applicability . . . (b) which establishes, alters, or revokes any procedure, practice, or requirement relating to agency hearings; . . ." Yet the board's declaration, amounting in my judgment to a rule, was not adopted in accordance with the procedures mandated by RCW 34.04.020 through 34.04.080 and should not be effective for any purpose.

Since the board lost jurisdiction when the petition was not filed within the required 20 days, no appeal may be taken to the superior court. For that reason I would reverse the judgment below.

Reconsideration denied February 9, 1982.

Review denied by Supreme Court May 7, 1982.