# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73711-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| AARON MICHAEL THOMAS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |
| | ) | |

Cox, J. – Aaron Thomas appeals the judgment and sentence based on the trial court's denial of his motion to suppress evidence. Because the trial court's unchallenged findings of fact support the court's conclusion that police officers had specific and articulable facts to conduct an investigative Terry stop, we affirm.

Officer Christopher Bennett and Officer Paul Stewart of the Everett police department approached a residence to investigate a stolen van parked directly in front of the residence. Both officers regularly patrolled the area and knew that the residence had been associated with stolen vehicles and other criminal activity.

The van was filled with certain items, but the driver and passenger seats remained empty. Officer Bennett recognized motorcycle helmets and gloves in the van along with men's and woman's clothing. Officer Bennett also saw court paperwork in the van, containing Shyla Gypin's name on it.

When these two officers approached the residence, Thomas and a woman emerged, and Officer Bennett asked her for her name. She responded that her name was Shyla, who was later identified as Shyla Gypin. The officers also noticed that Thomas wore a motorcycle jacket.

Officer Bennett then asked Thomas for identification, and the police dispatch confirmed outstanding warrants for his arrest. After Officer Bennett arrested Thomas, Officer Stewart searched Thomas, finding plastic bags containing what he believed to be methamphetamine.

The State charged Thomas with possession of a controlled substance, and the Washington State Patrol Crime Laboratory confirmed that the plastic bags contained methamphetamine. Thomas moved to suppress the methamphetamine, arguing that the police obtained it from an unlawful seizure. The trial court denied the motion, and the parties proceeded with a stipulated bench trial. The trial court found Thomas guilty of possession.

Thomas appeals.

## MOTION TO SUPPRESS

Thomas argues that the trial court improperly denied his motion to suppress evidence. We disagree.

CrR 3.6 governs motions to suppress evidence. In reviewing a trial court's denial of a motion to suppress, we determine whether substantial evidence supports the trial court's findings of fact and whether those findings of fact support the conclusions of law.[1] Substantial evidence is "'evidence sufficient to

---

[1] State v. Fuentes, 183 Wn.2d 149, 157, 352 P.3d 152 (2015).

persuade a fair-minded, rational person of the truth of the matter.'"[2] We review de novo the trial court's conclusions of law.[3]

Under the Fourth Amendment to the United States Constitution and article I, section 7 of Washington's Constitution, an officer may not unreasonably seize a person without a warrant.[4]

An investigative stop, discussed in Terry v. Ohio,[5] provides an exception to a warrantless seizure.[6] A Terry stop allows an officer to briefly detain a person for questioning if the officer has reasonable suspicion that the person stopped is or is about to be engaged in criminal activity.[7] An officer has a reasonable suspicion if there is a "substantial possibility that criminal conduct has occurred or is about to occur."[8]

An officer's reasonable suspicion must be based on specific and articulable facts, taken together with rational inferences from those facts, known

---

[2] Dep't of Labor & Indus. v. Lyons Enters., 185 Wn.2d 721, 731, 374 P.3d 1097 (2016) (quoting R & G Probst v. Dep't of Labor & Indus., 121 Wn. App. 288, 293, 88 P.3d 413 (2004)).

[3] Fuentes, 183 Wn.2d at 157.

[4] Id. at 157-58.

[5] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[6] Fuentes, 183 Wn.2d at 158.

[7] Id.

[8] State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986).

to the officer at the inception of the stop.[9] "An officer's hunch does not justify a stop."[10] If officers do not have reasonable suspicion of criminal activity under the totality of circumstances to support the stop of a suspect, the evidence uncovered from the stop must be suppressed.[11]

In evaluating the reasonableness of an officer's suspicion, we look at the totality of the circumstances known to the officer, which "includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty."[12]

Here, Officer Bennett and Officer Stewart testified at the CrR 3.6 hearing. The trial court's unchallenged findings of fact list the reasons why the officers believed that Thomas and Gypin were associated with the stolen van:

> the stolen GMC van was parked directly in front of [the residence], where Thomas and Gypin emerged from; the residence . . . had previously been associated with stolen vehicles or other criminal activity; the GMC van only had room for two people because the van was filled with property except for the driver and front passenger seat; there was motorcycle gear and clothing inside the GMC van for a male and female, and Thomas and Gypin were a male and female, respectively; Thomas was wearing a motorcycle jacket; and the court paperwork inside the GMC van had the name Shyla Gypin.[13]

---

[9] Fuentes, 183 Wn.2d at 158; State v. Moreno, 173 Wn. App. 479, 492, 294 P.3d 812 (2013).

[10] Fuentes, 183 Wn.2d at 161.

[11] Id. at 158.

[12] Id.

[13] Clerk's Papers at 92-93.

The trial court also found that Officer Bennett was familiar with motorcycles and motorcycle equipment due to his professional and personal experience and did not observe a motorcycle near the residence. Thus, the trial court concluded that Officer Bennett and Officer Stewart "had specific and articulable facts pursuant to Terry, which taken with reasonable inferences, justified their detention of Thomas" by asking for his identification, even before the officers learned Gypin's name.[14]

Thomas does not assign error to these findings, so they are verities on appeal.[15] Thus, the only question is whether the unchallenged facts support the trial court's conclusions of law. Based on the totality of the circumstances that the officers observed, we hold that the unchallenged findings of facts support the trial court's conclusions of law. Thus, the trial court properly denied Thomas's motion to suppress the evidence obtained from the lawful Terry stop.

The officers were familiar with the area and the residence from which Thomas emerged. Officer Bennett's familiarity with motorcycle equipment and the fact that Thomas wore a motorcycle jacket that was consistent with the motorcycle gear inside the stolen van supports a reasonable suspicion of his involvement with the stolen van. Additionally, Thomas emergence from the residence with a woman supports a reasonable suspicion of his involvement with the van because the van contained men's and women's clothing. Further, the

---

[14] Id. at 93-94.

[15] Mueller v. Wells, 185 Wn.2d 1, 9, 367 P.3d 580 (2016).

van's driver and passenger seat remained empty, although certain items filled the rest of the van, which supports a rational inference that two people were involved with the van.

Thomas argues that innocuous facts led to his detention, which do not provide reasonable suspicion to support a Terry stop. He relies on State v. Tijerina[16] and specifically argues that the fact that he was wearing a motorcycle jacket and the fact that he was with a women constitute innocuous facts. But that case is distinguishable.

There, two officers stopped a vehicle after observing it cross a fog line and return to the inside lane.[17] The driver, Roland Tijerina, identified himself and the passenger, Roman Gonzalez.[18] When Tijerina opened the glove box to obtain the vehicle registration, one of the officers noticed several small bars of soap inside, similar to the kind commonly given out at motels.[19] The officers did not issue a citation but searched the vehicle, finding contraband.[20] The trial court denied Tijerina's motion to suppress the evidence obtained from the search.[21]

To justify the stop, one of the officers testified that his suspicions were based on his observation of the soap, the fact that Tijerina and his companion

---

[16] 61 Wn. App. 626, 811 P.2d 241 (1991).

[17] Id. at 628.

[18] Id.

[19] Id.

[20] Id.

[21] Id. at 627.

were Hispanic, and his knowledge of drug activity by Hispanics in motels in the area.[22] But Division Three of this court determined that the presence of motel-sized bars of soap in a vehicle driven by Hispanics was innocuous and did not evidence suspicious criminal activity.[23] Additionally, the court stated that the fact that some Hispanics were known to engage in drug trafficking in motels was not sufficient evidence to create a reasonable suspicion that Tijerina was engaged in such activity.[24] The court further stated that the officer's investigation, "after he decided not to issue a citation[,] exceeded the scope of the initial stop and was improper unless Mr. Tijerina's subsequent consent to the search of his car sufficiently purged the taint of the illegal detention."[25] Accordingly, the court determined that the evidence should have been suppressed.[26]

Conversely, in this case, the officers' testimony shows that the fact that Thomas wore a motorcycle jacket and the fact that he was with a woman were not the only two factors leading to the officers' reasonable suspicion. As discussed above, there were several other specific and articulable facts, and rational inferences from those facts, that led to the officers' reasonable suspicion. These facts included the location of the van, the van's empty driver and passenger seats, and the van's contents.

---

[22] Id. at 629.

[23] Id.

[24] Id.

[25] Id.

[26] Id. at 630.

Similarly, Thomas argues that his presence at a residence associated with criminal activity was insufficient to raise a reasonable suspicion to support a Terry stop. But the officers' testimony shows that Thomas's presence at the residence was not the only factor leading to the officers' reasonable suspicion.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Spearman, J.,_                    _Appelwick, J._