IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DELIVERY EXPRESS, INC., a Washington corporation, | ) ) ) | No. 78796-9-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | |
| Respondent. | ) ) ) | FILED: June 10, 2019 |

ANDRUS, J. — Delivery Express, Inc. (DEI) challenges the Board of Industrial Insurance Appeals' (Board) decision that DEI is obligated to pay Industrial Insurance Act[1] (IIA) premiums for some of its drivers. Because substantial evidence supports the Board's finding that the essence of the drivers' independent contracts with DEI was their personal labor, DEI failed to establish the drivers were exempt under the leased-truck exemption of RCW 51.08.180, and the drivers' status as sole proprietors does not exclude them from coverage under RCW 51.12.020, we affirm.

## FACTS

DEI provides same-day, next-day, and next-week Seattle delivery service,

---

[1] Title 51 RCW.

including courier, freight, logistics and freight forwarding. It advertises 24-hour on-call courier services anywhere in Western Washington. When initially founded in November 1996, DEI obtained a Washington Utilities & Transportation Commission (WUTC) intrastate common carrier permit, purchased vehicles, and hired drivers for whom it paid workers' compensation premiums. In 2000, its founder, David Hamilton, decided to expand DEI's business by contracting with drivers who provided their own vehicles. DEI started using an independent contractor agreement, under which it "leased" the vehicle and driver and, in return, paid the driver a commission for each completed delivery. DEI contracted with drivers of 24-foot box trucks, passenger cars, and "everything in between."

Under the terms of the agreements, the drivers were deemed independent contractors providing transportation services to DEI customers. Each driver was required to furnish and operate a vehicle, pay the cost of operating and maintaining the vehicle, and refrain from competing with DEI for any customer whose freight the driver transported under a bill of lading issued by DEI. The agreements identified the vehicle the driver intended to use but did not mandate any size, make, or model.

DEI uses a dispatcher "app" to notify drivers of available work. Some drivers have specific routes they drive on a daily basis. Most, however, are "on demand," meaning once they download DEI's app onto their handheld device, they can log in and wait for a delivery assignment. The on-demand drivers can accept or reject any specific delivery, although there is scant evidence they ever rejected a job. The cargo delivered ranged from small items—such as escrow documents

and other paperwork, blood samples or medical specimens, T-shirts, and computer hardware—to larger items—such as lumber, raw materials, and non-inventory stock for grocery and department stores.

In February 2010, the Department of Labor & Industries notified DEI it intended to conduct an audit for the calendar year 2009 to determine DEI's compliance with workers' compensation laws. By October of that year, the Department notified DEI that the firm's independent contractor drivers were covered workers under the IIA. The Department concluded the drivers did not meet any exemption under either RCW 51.08.180[2] or 51.08.195.[3] It notified DEI that effective July 1, 2010,[4] DEI needed to report all driver hours under a risk classification for "parcel delivery."

Hamilton spoke with the Department auditor, Gina Bautista, by phone and disagreed with her conclusions. One finding in particular seemed to stick out to Hamilton—namely, that the drivers rendered the same services as DEI did. Rather than appeal the decision, DEI decided to change its business model and become a "freight broker," rather than a common carrier. On April 20, 2011, DEI ceased operating as a common carrier when it obtained a freight broker license from the WUTC and the United States Department of Transportation.

When DEI changed its business model, it asked its drivers to obtain a motor carrier license from the WUTC and required them to execute new agreements,

---

[2] RCW 51.08.180 defines "worker" as including independent contractors when "the essence of [the contract] is his or her personal labor."

[3] RCW 51.08.195 excludes independent contractors who meet a six-factor test set out in the statute.

[4] Because this was an educational audit, DEI only owed IIA premiums prospectively.

called broker-carrier agreements. This agreement made no mention of "leasing" any vehicles. Instead, it identified DEI as the "broker" and the independent contractor as the "motor carrier." Under the broker-carrier agreement, the drivers agreed to "provide motor vehicle equipment with drivers to provide small package/parcel pick up and delivery service to [DEI's] shippers and consignees." As under the former contractor agreement, the drivers were paid a commission of each invoice DEI issued to its customers. The covenant not to compete with DEI also remained the same.

Hamilton believed that by converting DEI's business model from common carrier to freight broker, he was bringing the company into compliance with the Department's audit because DEI and the drivers would no longer be in the same line of business. DEI did not pay any IIA premiums for the drivers after it was notified of the 2009 audit results.

In February 2011, the Department notified DEI it would conduct a second audit for the calendar year 2010. The Department later modified the audit period to include only the last two quarters of 2010 and all of 2011. Once again, the Department determined the drivers were covered workers.

On September 19, 2012, the Department notified DEI that, as a result of the audit, it was assessing $841,639 in workers' compensation premiums, penalties, and interest. The Department imposed a penalty of $127,500 for failing to maintain adequate records under RCW 51.48.030 and a penalty of $50,000 for "knowingly and intentionally evad[ing] paying workmen's compensation insurance."

DEI sought reconsideration of the Department's order of assessment. After receiving and reviewing additional documents from DEI, the Department denied reconsideration on January 17, 2014. DEI then appealed the Department's assessment order to the Board. The Board granted the appeal and referred the matter to an Industrial Appeals Judge (IAJ) for an evidentiary hearing.

The IAJ conducted the hearing beginning in the autumn of 2014 and concluding in the summer of 2015, and, in June 2016, issued a proposed decision and order affirming in part and reversing in part the Department's assessment order. The IAJ found that the majority of drivers were not exempt under RCW 51.08.180 or 51.08.195 but found three drivers qualified for an exemption. It reversed the misrepresentation penalty and affirmed the penalty for failing to maintain adequate records. Because the Department's premium calculation included three drivers whom the IAJ determined should be excluded, the IAJ remanded the matter to the Department for a recalculation of the premiums DEI owed.

In September 2016, both parties asked the Board to review the IAJ's proposed decision and order. On November 3, 2016, the Board adopted the IAJ's decision and order as its own.

DEI filed a petition for judicial review in King County Superior Court, which affirmed in substantial part the Board's decision. DEI appeals, arguing that the drivers are exempt from IIA coverage for all or a portion of the audit period under

two separate provisions of RCW 51.08.180, or alternatively, as sole proprietors under RCW 51.12.020.[5]

## ANALYSIS

The Administrative Procedure Act, chapter 34.05 RCW, governs this court's review of the Board's IIA premium assessments.[6] RCW 34.05.570(3) provides that this court may grant relief from an agency order if the agency has erroneously interpreted or applied the law, or the order is not supported by substantial evidence. We thus review the Board's factual findings for substantial evidence[7] and view the evidence in the light most favorable to the Department, the party who prevailed before the Board.[8] The Board's conclusions of law are reviewed de novo, giving substantial weight to the agency's interpretation.[9]

## A. RCW 51.08.180

DEI contends the Board erred in finding that the drivers are "workers" under two separate provisions of RCW 51.08.180. This statute extends IIA coverage to:

> every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title, . . . PROVIDED, That a person is not a worker for the purpose of this title, with respect to his or her activities attendant to operating a truck which he or she owns, and which is leased to a common or contract carrier.

---

[5] DEI does not appeal the Board's determination that the drivers do not qualify under the statutory exemption for independent contractors in RCW 51.08.195.

[6] RCW 51.48.131; see also Dep't of Labor & Indus. v. Lyons Enters., Inc., 185 Wn.2d 721, 731, 374 P.3d 1097 (2016).

[7] Lyons, 185 Wn.2d at 731.

[8] Henry Indus., Inc. v. Dep't of Labor & Indus., 195 Wn. App. 593, 600, 381 P.3d 172 (2016).

[9] Lyons, 185 Wn.2d at 732.

The Board found that personal labor for delivering items was the essence of the contract between DEI and most of its drivers, and that these drivers were "workers" covered by the IIA. The Board also found the drivers did not lease their vehicles to DEI, making the leased-truck exemption inapplicable.

DEI challenges the factual basis for the Board's "essence of the contract" finding and the Board's failure to define the word "truck" under the leased-truck exemption.

### 1. "Essence of the Contract"—the *White* Test

To determine whether the essence of a contract is personal labor, this court looks "to the contract, the work to be done, the situation of the parties, and other attendant circumstances."[10] The court focuses on the realities of the situation.[11] Whether a particular individual is a "worker" under this provision of RCW 51.08.180 is a mixed question of law and fact.[12]

In White v. Department of Labor & Industries,[13] the Supreme Court held that personal labor is <u>not</u> the essence of a contract with an independent contractor (1) when the independent contractor owns or supplies machinery or equipment (as distinguished from the usual hand tools) to perform the contract; (2) when the independent contractor cannot perform the contract without assistance; and

---

[10] Id. at 735 (quoting Lloyd's of Yakima Floor Cen. v. Dep't of Labor & Indus., 33 Wn. App. 745, 749, 662 P.2d 391 (1982)).

[11] Id. at 735-36 (internal quotation marks omitted).

[12] Henry, 195 Wn. App. at 602.

[13] 48 Wn.2d 470, 294 P.2d 650 (1956).

(3) when the independent contractor either chooses to or must employ others to do all or part of the work he or she has contracted to perform.[14]

This court held in Henry Industries, Inc. v. Department of Labor & Industries,[15] a factually analogous case, that a courier service company's independent contracting drivers were workers under RCW 51.08.180 because vehicles they used to deliver packages were not specialized equipment needed to perform the contracted work.[16] As in Henry, there is substantial evidence supporting the Board's finding that the drivers' personal labor is the essence of the agreements between DEI and the drivers. The primary object is not the machinery the drivers own; it is the service of driving packages from point A to point B.

First, paragraph 1 of the contractor agreement and paragraph 4 of the broker-carrier agreement identify the purpose of the agreements as providing delivery or transportation services. The drivers testified that their full time "job" was delivering packages for DEI, that DEI required them to log in on a regular basis, that they logged in early in the morning and remained available the entire day, that they drove eight hours a day, Monday through Friday, for DEI, and that they never hired anyone or asked anyone to help with the deliveries, or asked anyone to log in on their behalf when they were not available. This evidence supports a finding that the work DEI needed was the labor of driving from one location to another to pick up and drop off packages.

---

[14] Id. at 474.

[15] 195 Wn. App. 593, 381 P.3d 172 (2016).

[16] Id. at 609. This court concluded there was "no persuasive argument that the vehicles the drivers are required to provide constitute special equipment, as opposed to ordinary equipment, to perform the courier services under the agreements." Id. at 608.

Second, neither the contractor agreements nor the broker-carrier agreements specified that the drivers had to provide any particular type of vehicle. The majority of drivers used small passenger cars, such as Toyota Yaris, Corolla, Scion and Prius, Subaru Legacy, Honda Fit, Ford Focus, Chevrolet Cavalier, Kia Rio, Nissan Maxima, Hyundai Elantra, and Nissan Versa. As the court in Henry noted, these types of vehicles are not the "'necessary machinery or equipment' which, under White, would take this agreement outside the operation of the IIA."[17]

Third, the contractor agreements imposed appearance and conduct requirements on the drivers. For example, the agreement required the drivers to "conduct themselves courteously (both on the road and while with customers) and in a professional manner." They were required to be "neatly attired" and to wear "clean and wrinkle free" uniforms. Hair had to be "clean, neat and conservatively styled," and any mustaches or beards had to be "neatly trimmed." These appearance and behavior provisions are evidence that DEI placed more emphasis on how the drivers interacted with its customers than it did on the equipment the drivers used.

Finally, both the contractor agreements and the broker-carrier agreements contain non-compete clauses that limit the drivers' ability to solicit business from DEI customers, both during the term of the agreement and for 6 to 12 months thereafter. Such a clause is another strong indication that DEI entered into a contract with the driver for his or her personal skills at delivering packages in an efficient manner, rather than simply leasing a vehicle to effectuate deliveries.

---

[17] Id. at 611 (quoting Lloyd's, 33 Wn. App. at 751).

This evidence provides substantial support for the Board's finding that the drivers' personal labor was the essence of their contracts with DEI.

## 2. Leased-Truck Exemption

Next, DEI contends the Board erred in refusing to define the word "truck" as used in the leased-truck exemption of RCW 51.08.180. It also argues the leased-truck provision is unconstitutionally vague. We reject both arguments.

### a. Meaning of "Operating a Truck"

The IAJ noted, in its discussion of the White test, that DEI "pressed for a definition of a truck." The IAJ wrote, "I do not need to and will not define a truck in this opinion," because the definition was unnecessary to determine whether the vehicles were specialized equipment under White. Neither the IAJ nor the Board specifically addressed the term as used in the leased-truck exemption. We agree with DEI that the Board's decision did not address the leased-truck exemption and focused solely on the "essence of the contract" portion of RCW 51.08.180. Nevertheless, we disagree with DEI that any of the passenger cars used by its courier drivers are "trucks" under this clause.[18]

To trigger the leased-truck exemption, DEI had to prove (1) the drivers' activities were "attendant to operating a truck," (2) which the drivers owned, and (3) which the drivers leased to a common carrier.[19] We must determine, according

---

[18] Statutory interpretation is a question of law, reviewed de novo. Id. at 622; see also Green v. Dep't of Soc. & Health Servs., 163 Wn. App. 494, 508, 260 P.3d 254 (2011) ("Under RCW 34.05.570(3)(d), the APA's 'error of law' standard, we may substitute our interpretation of the law for the agency's.").

[19] RCW 51.08.180; see also B&R Sales, Inc. v. Dep't of Labor & Indus., 186 Wn. App. 367, 375, 344 P.3d 741 (2015) (employer has burden of showing IIA premiums assessed incorrectly). DEI concedes this provision would only apply to the period during which it held a common carrier permit and became inapplicable once DEI began doing business as a freight broker in April 2011.

to established principles of statutory interpretation, whether "operating a truck" extends to delivering small packages via a passenger vehicle.

The purpose of statutory interpretation is to determine and give effect to the intent of the legislature.[20] Phrases in a statute are given their plain and ordinary meaning absent a contrary statutory definition.[21] We may refer to dictionaries to ascertain the common meaning of statutory language.[22] We must also consider the statute as a whole and harmonize its provisions by reading them in context with related provisions.[23] We presume the legislature does not intend absurd results, and we will reject any reading of a phrase that produces an absurd result.[24] Only if more than one interpretation of the plain language is reasonable, do we find a statute ambiguous and engage in statutory construction and consider the statute's legislative history.[25] Finally, a guiding principle of interpreting IIA provisions is to liberally construe the remedial statute "to achieve its purpose of providing compensation to all covered employees injured in their employment," with all doubts resolved in favor of coverage of the worker.[26]

---

concedes this provision would only apply to the period during which it held a common carrier permit and became inapplicable once DEI began doing business as a freight broker in April 2011.

[20] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).

[21] State v. Lilyblad, 163 Wn.2d 1, 6, 177 P.3d 686 (2008).

[22] Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wn.2d 889, 899, 31 P.3d 1174 (2001).

[23] Henry, 195 Wn. App. at 622.

[24] Tingey v. Haisch, 159 Wn.2d 652, 664, 152 P.3d 1020 (2007).

[25] Evans, 177 Wn.2d at 192-93; Cherry v. Mun. of Metro. Seattle, 116 Wn.2d 794, 799, 808 P.2d 746 (1991).

[26] Lyons, 185 Wn.2d at 734 (quoting Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987)).

DEI urges this court to adopt a broad definition of "truck" as that term is defined in our licensing statutes. Under RCW 46.04.653, "truck" means "every motor vehicle designed, used, or maintained primarily for the transportation of property." DEI contends the vehicles its drivers used, although not designed to transport property, were nevertheless primarily used for that purpose and thus should be deemed "trucks" under RCW 51.08.180. We reject this argument because it ignores the ordinary meaning of truck, it takes the word "truck" out of the context in which the legislature used it, it is based on a logical fallacy, and it would lead to an absurd result.

First, the dictionary definition of "truck" is either "an automotive vehicle built for the transportation of goods on its own chassis," or "a motorized vehicle equipped with a swivel for hauling a trailer."[27] Under the ordinary definition, if the vehicle has a chassis designed to transport property or has a swivel to pull a trailer to transport property, it is a truck within the meaning of RCW 51.08.180. The passenger cars, SUVs, and minivans driven by DEI's couriers clearly fall outside this definition of truck, whereas box trucks and pickup trucks would fit within it.

Second, the leased-truck exemption must be read in the context in which it occurs. RCW 51.08.180 refers to "trucks" leased to "common carriers." A "common carrier" is any person who undertakes to transport property for the general public "by motor vehicle for compensation."[28] A "motor vehicle" is defined as "any truck, trailer, semitrailer, tractor, . . . or any self-propelled or motor-driven

---

[27] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2454 (2002).
[28] RCW 81.80.010(1).

- 12 -

vehicle used upon any public highway of this state for the purpose of transporting property, but not including baggage . . . ."[29] If the legislature had intended RCW 51.08.180's leased-truck exemption to encompass all motor vehicles, it could have simply said so. By singling out trucks for the IIA exemption, the legislature must have intended to narrow its application to a particular subset of motor vehicles that common carriers use to move freight.[30] Applying the dictionary definition is consistent with this legislative intent. It is also consistent with the well-established principle that the IIA is liberally construed to protect more workers.

Third, DEI's argument is based on the logical fallacy that because all trucks are motor vehicles that can be used to transport property, and passenger cars are motor vehicles that can be used to transport property, then all passenger cars must be trucks. This argument is a classic non sequitur, known as the fallacy of the undistributed middle:[31]

> All trucks [Z] can be used to transport property [B]
> A passenger car [Y] can be used to transport property [B]
> Therefore, all passenger cars [Y] are trucks [Z][32]

The result is a logical fallacy.[33]

---

[29] RCW 81.80.010(7) (emphasis added).

[30] See Filmore LLLP v. Unit Owners Ass'n of Centre Pointe Condo., 183 Wn. App. 328, 344, 333 P.3d 498 (2014) (undefined common statutory terms are given their common meaning unless there is strong evidence the legislature intended something else).

[31] See generally Stephen M. Rice, Indispensable Logic: Using the Logical Fallacy of the Undistributed Middle as a Litigation Tool, 43 Akron L. Rev. 79, 89-101 (2010).

[32] See Allied Erecting & Dismantling, Co. v. USX Corp., 249 F.3d 191, 202 n.1 (3d Cir. 2001).

[33] Aylett v. Sec'y of Hous. & Urban Dev., 54 F.3d 1560, 1569 & n.5 (10th Cir. 1995); see also Spencer v. Texas, 385 U.S. 554, 578-79 & n.9, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967) (Warren, C.J., dissenting and concurring).

Finally, DEI's argument that we should define a "truck" as any motor vehicle that could be used to transport any type of property would lead to an absurd result. Under this approach, any small passenger car or even a motorcycle would qualify. Common sense must inform our analysis,[34] and common sense tells us no ordinary person would consider a motorcycle, a Toyota Yaris, or a Chevy Malibu to be a truck.

We hold that RCW 51.08.180's leased-truck exemption applies only to a motor vehicle built to transport goods on its own chassis or to a motor vehicle equipped with a swivel for hauling a trailer to transport goods.

Using this definition, none of the drivers the Board deemed "workers" under the IIA, with the exception of two, drove trucks to deliver packages for DEI. Two individuals, Matin Syed and Randall Utterback, testified they drove pickup trucks to make deliveries for DEI. Syed drove a 2000 Ford Ranger, a vehicle with a pickup bed, which he used in 2009 and 2010. Utterback drove a Chevy pickup truck with a canopy for DEI business in 2010. The Board included Syed and Utterback in the list of drivers for whom DEI owes IIA premiums for the last two quarters of 2010, and excluded these same drivers from the list for 2011 under RCW 51.08.195. Thus, the only time period for which the leased-truck exemption could be relevant for Syed and Utterback is the last two quarters of 2010.

But neither Syed's nor Utterback's contractor agreement during 2010 is in the record. DEI offered Exhibit 284, a contractor agreement between Syed and DEI, and Exhibit 321, a contractor agreement between Utterback and DEI. But the

---

[34] State v. Alvarado, 164 Wn.2d 556, 562, 192 P.3d 345 (2008).

IAJ excluded Syed's agreement because DEI did not produce it during the Department's audit. And the IAJ rejected Utterback's agreement after the hearing. We thus have no agreement to examine to determine if it constituted a truck lease. Furthermore, Utterback testified he never leased his truck to DEI. And even if Syed's agreement had been admitted, it lists a 2005 Honda as Syed's "equipment," not a 2000 Ford Ranger.[35] Thus, based on this record, DEI failed to establish that Syed or Utterback met the leased-truck exemption during the last two quarters of 2010.

### b. Constitutionality of Leased-Truck Exemption

DEI contends the leased-truck exemption is unconstitutionally vague. We disagree. Whether a statute is constitutional is a question of law, reviewed de novo.[36] Statutes are presumed constitutional.[37] Under the due process clause of the Fourteenth Amendment of the United States Constitution, RCW 51.08.180 is unconstitutionally vague if DEI demonstrates that the statute "does not provide ascertainable standards . . . to protect against arbitrary enforcement."[38] But due to the inherently vague nature of language, courts do not require "impossible standards of specificity."[39] Constitutional vagueness is "not mere uncertainty."[40]

---

[35] In addition, exhibits that were admitted for Syed—his Washington State vehicle registration and his certificate of liability insurance—both show a 2006 Mitsubishi Lancer, a passenger car.

[36] State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007).

[37] State v. Jacobson, 92 Wn. App. 958, 967, 965 P.2d 1140 (1998).

[38] Watson, 160 Wn.2d at 6 (quoting State v. Williams, 144 Wn.2d 197, 203, 26 P.3d 890 (2001)).

[39] City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990).

[40] Id.

A statute is unconstitutionally vague only "if persons of common intelligence must necessarily guess at its meaning and differ as to its application."[41]

DEI argues that it was subject to arbitrary enforcement by the Department because its auditors defined the term "truck" differently. The record does not bear this out. When DEI asked Bautista how she defined the word truck, she testified she searched the Federal Motor Carrier Safety Administration's online software program to see if any of DEI's drivers were listed as owning a truck. Bautista also attempted to contact individual drivers to ask them if they drove trucks to deliver packages. Finally, she searched the Washington State Department of Motor Vehicle Licensing website to determine if any drivers had vehicle registrations for any trucks.

Eliezar Eidenbom, the Department litigation specialist who handled DEI's requested reconsideration of the 2010-2011 audit, used what he called "a common definition of truck," which he defined as a motor vehicle designed to carry cargo. Eidenbom concluded that vans, SUVs, and minivans were not "trucks" because they were designed to carry passengers, not to carry loads. Eidenbom considered a pickup truck to fall within the statutory exemption and would also consider a cargo van to do so, if the van was designed for carrying freight and heavy loads and had its passenger seats removed to allow for loading property.

Both Bautisa and Eidenbom applied a definition consistent with this court's statutory interpretation. We can find nothing arbitrary about the approach they

---

[41] City of Seattle v. Webster, 115 Wn.2d 635, 643, 802 P.2d 1333 (1990).

took. Nor can we conclude that a person of ordinary intelligence must guess whether a vehicle is a truck.

DEI relies on Grant County v. Bohne,[42] to argue that RCW 51.08.180's leased-truck exemption is unconstitutionally vague. We find that case distinguishable. In Bohne, the Court considered whether a zoning ordinance, which provided that "[n]o buildings [may] be moved in on any lot in this district," was unconstitutionally vague.[43] Grant County claimed the Bohnes violated the ordinance by placing a mobile home on their lot. The Court held the ordinance was unconstitutionally vague because persons of average intellect would expect a prohibition against mobile homes to specifically refer to mobile homes.[44] But this case before us is dissimilar; people have an understanding of what a truck is. There is no guesswork needed to ascertain the meaning of this word.[45] Unlike the "building" versus "mobile home" distinction in Bohne, the average person would not think that a two-door or four-door passenger vehicle is a "truck." The leased-truck exemption is not unconstitutionally vague.

## B. RCW 51.12.020

Finally, DEI claims the Board erred in concluding that drivers who ran a courier business as sole proprietors were not statutorily excluded from the IIA

---

[42] 89 Wn.2d 953, 577 P.2d 138 (1978).

[43] Id. at 956.

[44] Id.

[45] See Town of Clyde Hill v. Roisen, 111 Wn.2d 912, 919, 767 P.2d 1375 (1989) (distinguishing Bohne, concluding people do have a basis in common practice and understanding for knowing what a "fence" is).

- 17 -

under RCW 51.12.020. This argument was rejected in Henry, and we see no basis for revisiting the issue here.

RCW 51.12.020(5) provides that sole proprietors are not included within the IIA's mandatory coverage. In Henry, the company argued that this statutory provision categorically exempted it from paying IIA premiums for drivers if those drivers operated their own businesses as sole proprietors.[46] This court held that because neither RCW 51.08.180 nor RCW 51.08.195 referenced RCW 51.12.020's exclusions,

> the most reasonable way to harmonize interpretation of these three statutes is to conclude that the legislature intended to include within the scope of "worker" those sole proprietors who met RCW 51.08.180's requirements and who were not excluded by RCW 51.08.195. Thus, even though a person may choose to set up his or her business as a sole proprietorship, that alone does not exclude that person from IIA coverage as a "worker." No other interpretation of these statutes makes sense.[47]

DEI's interpretation of RCW 51.12.020 is inconsistent with Henry. The DEI drivers who set up businesses as sole proprietors are not automatically excluded from IIA coverage by virtue of RCW 51.12.020.

## CONCLUSION

We affirm the Board's finding that, during the audit period, the drivers identified in Findings of Fact No. 3 and No. 4 of the Board's order are "workers" under RCW 51.08.180. The record supports the Board's finding that the essence of their contracts with DEI was their personal labor. DEI failed to establish that any of these drivers, with the exception of two, operated trucks and failed to establish

---

[46] 195 Wn. App. at 621.

[47] Id. at 623-24.

- 18 -

that these two drivers leased their vehicles to DEI. Thus, the leased-truck exemption is not applicable. Finally, RCW 51.12.020's "sole proprietor" exclusion does not alleviate DEI's liability for worker compensation premiums for drivers who are "workers" under RCW 51.08.180.

We affirm.

WE CONCUR:

_Andrus, J._

_Chun, J._

_Schindler, J._