230 P.3d 271 (2010)
Gary R. PROBST and et ux, d/b/a Diamond Driving School, Appellant,
v.
DEPARTMENT OF LABOR AND INDUSTRIES of the State of Washington, the Director of the Department of Labor and Industries of the State of Washington, and the Board of Industrial Insurance Appeals of the State of Washington, Respondents.
No. 39021-3-II.
Court of Appeals of Washington, Division 2.
May 4, 2010.
*272 Don W. Taylor, Owens Davies Fristoe Taylor & Schultz PS, Olympia, WA, for Appellant.
Robert M. McKenna, Attorney General's Office, Penny L. Allen, Attorney at Law, Ofc. of the Atty. General, Olympia, WA, for Respondents.
QUINN-BRINTNALL, J.
¶ 1 Following an audit, the Department of Labor and Industries (L & I) assessed Gary R. Probst $953,159.26 for unpaid industrial insurance premiums, penalties, and interest for his ownership of Diamond Driving Schools, America's Best Driving Schools, and Quality Driving Schools throughout Washington. An Industrial Appeals Judge (IAJ) recommended affirming the assessment in whole. The Board of Industrial Insurance Appeals (BIIA) adopted the IAJ's recommendation and affirmed the assessment in whole. Probst appealed to the Thurston County Superior Court. The superior court dismissed Probst's appeal because he failed to comply with RCW 51.52.112,[1] under which Probst was to pay the assessment in full or obtain an order waiving the pre-appeal payment by declaring the assessment an undue hardship. Because Probst failed to pay the assessment and did not seek a pre-appeal undue hardship order, we affirm.

FACTS
¶ 2 Probst ventured into the driving school business in 1995, when he opened Diamond Driving School. See R & G Probst v. Dep't of Labor & Indus., 121 Wash.App. 288, 289-90, 88 P.3d 413, review denied, 152 Wash.2d 1034, 103 P.3d 201 (2004) (Probst I). By 1998, Probst operated a number of driving schools across the state. That year, the Superintendent of Public Inspection (SPI) asked L & I to determine whether Diamond Driving School instructors functioned as independent contractors exempt from industrial insurance premiums. Probst I, 121 Wash. App. at 290-91, 88 P.3d 413. In 1999, L & I formally initiated an audit against Probst for the period from January 1, 1997 through December 31, 1999. Probst I, 121 Wash.App. at 290-91, 88 P.3d 413.
¶ 3 L & I repeatedly attempted to obtain business records from Probst, but he refused *273 to supply the requested documents. Probst I, 121 Wash.App. at 291-92, 88 P.3d 413. Because Probst refused to cooperate with the audit, L & I estimated the premiums owed based on Department of Licensing (DOL) and SPI records as allowed under RCW 51.16.155.[2]Probst I, 121 Wash.App. at 291-92, 88 P.3d 413. The records indicated that Diamond Driving School had 35 instructors. Probst I, 121 Wash.App. at 292, 88 P.3d 413. L & I assessed Diamond Driving School $68,028.76 in unpaid employee industrial insurance premiums, penalties, and interest. Probst I, 121 Wash.App. at 292, 88 P.3d 413.
¶ 4 Following a lengthy review process, we affirmed that assessment. Probst I, 121 Wash.App. at 295, 88 P.3d 413. Specifically, we held that Probst was barred from questioning any portion of the assessment's correctness because substantial evidence supported the BIIA's finding that Probst failed to cooperate with the L & I audit. Probst I, 121 Wash.App. at 295, 88 P.3d 413. Under RCW 51.48.040(3), "[a]ny employer who fails to allow adequate inspection in accordance with the requirements of this section ... is forever barred from questioning in any proceeding in front of the board of industrial insurance appeals or any court, the correctness of any assessment by the department based on any period for which such records have not been produced for inspection." Probst paid the $68,028.76 assessment in full.
¶ 5 Beginning in 2002, the DOL began another investigation into Probst's interest in several driving schools throughout the state. The DOL initiated the investigation after the SPI received numerous complaints alleging that Probst had renewed their driving instructor licenses though they no longer worked for him, that Probst had signed their names on student completion sheets, and that Probst had required that his name be signed to student driving records and not the name of the actual instructor. The investigation spanned nearly two years, focusing on Probst's involvement with every Diamond Driving School, America's Best Driving School, and Quality Driving School throughout Washington.
¶ 6 The DOL investigator interviewed hundreds of driving students and conducted a comprehensive review of each individual driving school's business records that had been filed with the DOL. Through this investigation, the DOL investigator determined that although Probst had halted his instructing responsibilities in 2003, he nonetheless had maintained a controlling interest in each of the schools. Specifically, the investigator determined that Probst owned or controlled the schools' assets such as insurance, cars, leases, classroom equipment, phones, advertising, and curriculum.
¶ 7 In August 2005, the DOL filed a statement of charges against Probst on a separate matter discovered through the investigation.[3] On September 21, 2005, Probst sent a letter to the DOL, requesting that it remove him as a named partner from 33 driving schools. He indicated that all assets in those driving schools "have been left with my former partner."[4] Administrative Record (AR) Ex. 2. The DOL did not honor Probst's letter due to the charges pending against him. The DOL would not allow changes to the record until it resolved that case.[5]
¶ 8 Meanwhile, the DOL referred Probst's case to L & I. Upon completing a pre-audit, L & I determined that a full audit was warranted; it appeared that Probst was evading taxes and had employed unreported *274 workers for which industrial insurance premiums were due. Significantly, Probst had closed his L & I account in 2002, and he had not reported any hours since then.[6]
¶ 9 Because of L & I's previous dealings with Probst, during which he was uncooperative, L & I attempted to subpoena Probst to start the audit.[7] On August 3, 2006, an L & I investigator attempted to serve the subpoena on Probst at 9109 Veterans Drive SW in Tacoma. The investigator noticed Probst getting into his car and called out to him. Probst responded, "[H]e's not here right now," and drove away. AR Transcripts (Nov. 6, 2007) at 14. Probst's son, who remained at the Veterans Drive location, accepted service of the subpoena on Probst's behalf.
¶ 10 The subpoena required Probst to appear at the L & I offices in Kennewick, Washington, on August 14, 2006. He was also required to produce
[t]ime cards, time books, employee earning records, records of production, canceled checks, check registers, bank statements, contracts, payroll journals, cash disbursement journals, invoices for materials or work, IRS returns with all supporting forms and schedules including forms W-2 and 1099, reports to Washington Employment Security and Department of Revenue, accountant worksheets and any other records in your possession relating to the subject business for the period 04/01/03 through 03/31/06.
AR Ex. 10.
¶ 11 Probst appeared for the audit, but he did not provide the requested documents. Instead, he produced three unrequested documents: (1) a December 15, 2005 letter from L & I indicating that it had opened an L & I account for Diamond Driving Schools; (2) a rate notice dated December 15, 2005, indicating the rate was effective October 1, 2005; and (3) a rate notice dated December 15, 2005, indicating the rate was effective January 1, 2003. During the meeting, Probst maintained that he no longer had any interest in the driving schools and, thus, had no access to the requested records.
¶ 12 Because Probst failed to provide the requested records, L & I relied on records provided by the DOL to conduct its audit. RCW 51.16.155. L & I calculated the assessment due by estimating the number of hours instructors worked using the DOL records. Those records identified the names of instructors and students who completed the driving school courses during the audit period.
¶ 13 On September 5, 2006, L & I issued Probst a notice and order of assessment of industrial insurance premiums, penalties, and interest in the amount of $953,159.26. Probst filed an appeal on October 11, 2006. After hearings, the IAJ recommended that the BIIA affirm L & I's assessment in full. In its final decision, the BIIA adopted the IAJ's recommendation and affirmed L & I's assessment in whole.
¶ 14 Probst then attempted to appeal the BIIA's decision to the Thurston County Superior Court. But Probst neither paid the tax amount due nor sought an order before filing his appeal to confirm that the preappeal payment amount due was an undue hardship, as required by RCW 51.52.112. After briefing and arguments by the parties, the superior court dismissed Probst's appeal because he had not complied with the requirements of RCW 51.52.112, and he was, thus, barred from challenging L & I's assessment. In the alternative, the superior court held that substantial evidence supported the BIIA's findings and its legal conclusions were not erroneous.

ANALYSIS

Standard of Review
¶ 15 The Administrative Procedures Act (APA), ch. 34.05 RCW, governs an *275 appeal from an assessment of industrial insurance premiums. RCW 51.48.131 ("Further appeals taken from a final decision of the [BIIA] under this section are governed by the provisions relating to judicial review of the administrative decisions contained in RCW 34.05.510 through 34.05.598."); Probst I, 121 Wash.App. at 293, 88 P.3d 413. We sit in the same position as the superior court and we review the BIIA assessment based on the record before the BIIA. Probst I, 121 Wash.App. at 293, 88 P.3d 413; Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 112 Wash.App. 291, 296, 49 P.3d 135 (2002), review denied, 149 Wash.2d 1003, 70 P.3d 964 (2003). We review questions of law, such as construction of statutes, de novo, but we accord substantial weight to the agency's interpretation of the statutes it administers. Superior Asphalt, 112 Wash.App. at 296, 49 P.3d 135; see also Malang v. Dep't of Labor & Indus., 139 Wash.App. 677, 684, 162 P.3d 450 (2007).

Application of RCW 51.52.112
¶ 16 Probst filed an appeal from the BIIA's decision affirming the notice and order of assessment. The superior court dismissed Probst's appeal, finding that he had failed to "either pay all taxes, penalties, and interest or obtain a court determination that payment was an undue hardship prior to filing his appeal." Clerk's Papers at 134. This is the standard set forth in RCW 51.52.112. On appeal, Probst contends that the superior court erred when it found that he must adhere to this standard. He contends that RCW 51.52.112 does not apply in his case. We disagree.
¶ 17 As an initial matter, it is a "well established rule that where statutes prescribe procedures for the resolution of a particular type of dispute, state courts have required substantial compliance or satisfaction of the spirit of the procedural requirements before they will exercise jurisdiction over the matter." James v. Kitsap County, 154 Wash.2d 574, 588, 115 P.3d 286 (2005) (citing Fisher Bros. Corp. v. Des Moines Sewer Dist., 97 Wash.2d 227, 230, 643 P.2d 436 (1982); Banner Realty, Inc. v. Dep't of Revenue, 48 Wash.App. 274, 738 P.2d 279 (1987) (holding that a superior court could not exercise its original jurisdiction under article IV, section 6, over a challenge to a tax decision where the party failed to strictly or substantially comply with statutory procedural requirements)). Here, Probst admittedly failed to comply with RCW 51.52.112's procedural requirements because he did not pay his penalty assessment in full or obtain an order of undue hardship.[8] Accordingly, the superior court properly declined to exercise jurisdiction and dismissed Probst's appeal. See James, 154 Wash.2d at 588, 115 P.3d 286; Fisher Bros., 97 Wash.2d at 230, 643 P.2d 436; Banner Realty, 48 Wash.App. 274, 738 P.2d 279.
¶ 18 Even so, Probst contends that the requirement to pay $953,159.26, the amount of taxes, penalties, and interest, denies him "reasonable access to the courts to redress an injustice." Br. of Appellant at 24. Probst could have, but did not, timely make this undue hardship argument before the superior court. Moreover, Probst fails to provide any legal or factual precedent to support this "due process" argument. "`[N]aked castings into the constitutional sea are not sufficient to command judicial consideration.'" In re the Matter of Rosier, 105 Wash.2d 606, 616, 717 P.2d 1353 (1986) (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir.1970), cert. denied, 401 U.S. 917, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971)). We will not consider arguments for which a party has not cited legal authority. RAP 10.3(a)(5); Johnson Forestry Contracting, Inc. v. Dep't of Natural Res., 131 Wash.App. 13, 25, 126 P.3d 45 (2005), review denied, 158 Wash.2d 1002, 143 P.3d 828 (2006).
*276 ¶ 19 Alternatively, Probst contends that RCW 51.52.110 implicitly repealed the standard in RCW 51.52.112. But this court has previously determined that RCW 51.52.110 does not apply to tax assessment cases. ETCO, Inc. v. Dep't of Labor & Indus., 66 Wash.App. 302, 305-06, 831 P.2d 1133 (1992). In ETCO, Division One of this court expressly held that RCW 51.48.131 sets forth the process for judicial appeals of penalty assessments,[9] not RCW 51.52.110. 66 Wash.App. at 305-06, 831 P.2d 1133.
¶ 20 Notwithstanding ETCO, Probst unconvincingly argues that RCW 51.52.110 impliedly repealed RCW 51.52.112. "`[A]uthority is legion that implied repeals of statutes are disfavored and courts have a duty to interpret statutes so as to give them effect.'" Dep't of Labor & Indus. v. Nat'l Sec. Consultants, Inc., 112 Wash.App. 34, 38 n. 4, 47 P.3d 960 (2002) (quoting Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co., 103 Wash.2d 111, 122, 691 P.2d 178 (1984)). We apply implied repeal analysis only where "(1) the later act covers the entire subject matter of the earlier legislation evidencing a clear intent to supersede the prior act; or (2) the two acts are so clearly inconsistent with and repugnant to each other that they cannot be reconciled." Nat'l Sec. Consultants, 112 Wash.App. at 38 n. 4, 47 P.3d 960 (citing Kingston Lumber Supply Co. v. High Tech. Dev. Inc., 52 Wash.App. 864, 866-67, 765 P.2d 27 (1988), review denied, 112 Wash.2d 1010 (1989)). Probst contends that the two acts are repugnant to one another. We disagree.
¶ 21 Where two statutes dealing with the same subject matter are in apparent conflict, established rules of statutory construction require us to give preference to the more specific statute and to the later adopted statute. ETCO, 66 Wash.App. at 306, 831 P.2d 1133 (citing In re Estate of Little, 106 Wash.2d 269, 284, 721 P.2d 950 (1986); Gen. Tel. Co. of the Nw., Inc. v. Utils. & Transp. Comm'n, 104 Wash.2d 460, 464, 706 P.2d 625 (1985); 2B N. Singer, Statutes and Statutory Construction, § 15.02 (5th ed. 1992)). But RCW 51.52.110 and .112 are neither inconsistent nor so repugnant to one another that they cannot be reconciled.
¶ 22 RCW 51.52.110 prohibits bonds in general appeals from BIIA decisions "[i]n cases involving injured workers." RCW 51.52.110. It states in pertinent part:
No bond shall be required on appeals to the superior court or on review by the supreme court or the court of appeals, except that an appeal by the employer from a decision and order of the board under [now repealed] RCW 51.48.070, shall be ineffectual unless, within five days following the service of notice thereof, a bond, with surety satisfactory to the court, shall be filed, conditioned to perform the judgment of the court.
RCW 51.52.110.
¶ 23 In contrast, RCW 51.48.131, not RCW 51.52.110, governs the procedure to appeal from adverse BIIA decisions pertaining to penalty assessments against employers. ETCO, 66 Wash.App. at 305, 831 P.2d 1133 (holding that RCW 51.52.110 does not apply to judicial appeals of penalty assessments). Additionally, RCW 51.52.112 specifically requires employers to pay "[a]ll taxes, penalties, and interest ... in full before any action may be instituted in any court to contest all or any part of such taxes, penalties, or interest unless the court determines that there would be an undue hardship to the employer." (Emphasis added.)
¶ 24 RCW 51.52.112 imposes a requirement explicitly pertaining to appeals of penalty assessments. Under its plain language, RCW 51.52.112 specifically applies to employer appeals of taxes, penalties, and interest that L & I imposes under the Industrial Insurance Act, Title 51 RCW. Moreover, RCW 51.52.112 is the later enacted statute and was promulgated in 1986, at which time RCW 51.52.110, including the "no bond" language, had been in effect for many years. See, e.g., former RCW 51.52.110 (1977). Thus, in addition to being the statute specifically referencing the procedure to appeal *277 penalty assessments at issue here, RCW 51.52.112 is the later adopted statute and entitled to preference. See ETCO, 66 Wash. App. at 306, 831 P.2d 1133. Probst's contention that RCW 51.52.110 impliedly repealed RCW 51.52.112 lacks merit. See RCW 51.48.131; RCW 34.05.570(1)(a); Probst I, 121 Wash.App. at 293, 88 P.3d 413.
¶ 25 Accordingly, we hold that the trial court properly dismissed Probst's appeal because he failed to satisfy the requirements of RCW 51.52.112 either by tendering payment of the assessment or requesting an order of undue hardship. We do not address Probst's remaining issues.
¶ 26 Affirmed.
We concur: BRIDGEWATER, P.J., and HUNT, J.
NOTES
[1] RCW 51.52.112 states:

All taxes, penalties, and interest shall be paid in full before any action may be instituted in any court to contest all or any part of such taxes, penalties, or interest unless the court determines that there would be an undue hardship to the employer. In the event an employer prevails in a court action, the employer shall be allowed interest on all taxes, penalties, and interest paid by the employer but determined by a final order of the court to not be due, from the date such taxes, penalties, and interest were paid. Interest shall be at the rate allowed by law as prejudgment interest.
[2] RCW 51.16.155 provides that "[i]n every case where an employer insured with the state fails or refuses to file any report of payroll required by the department and fails or refuses to pay the premiums due on such unreported payroll, [L & I] shall have authority to estimate such payroll and the premiums due thereon and collect premiums on the basis of such estimate."
[3] The record is unclear as to whether the statement of charges was filed in August or October but in the context, it appears to have been sent to Probst in August.
[4] Probst contends that he transferred all ownership in the schools to Dan Barker, Mike Cassidy, Sean Probst, and Malia Probst-Orbino.
[5] The DOL also charged Probst with filing false information. The parties eventually resolved the matter through a settlement agreement. As a part of the agreement, Probst agreed to divest all financial interest in all driving schools no later than February 15, 2007.
[6] The L & I auditor reopened the account as a part of the audit process.
[7] Generally, L & I begins an audit by sending a letter stating the date, time, and place of the audit, which involves an investigator reviewing the employer's records with the employer. Once the initial review is completed, a supervisor reviews the records and sends the case to L & I's collections department to send the employer a notice and order of assessment if there is a debit balance at the end of the audit.
[8] In addition, Probst admittedly failed to allow adequate inspection of the driving school records and was barred from questioning the correctness of any assessment. RCW 51.48.040; see Probst I, 121 Wash.App. at 295, 88 P.3d 413. Because we hold that the superior court properly dismissed Probst's appeal due to his noncompliance with RCW 51.52.112, we do not reach the merits of the BIIA decision, including its findings of fact and conclusions of law that Probst was an employer and barred from questioning the correctness of the assessment under RCW 51.48.040 for refusing to allow adequate inspection of the driving school records.
[9] Probst does not argue that RCW 51.52.112 conflicts with RCW 51.48.131 or the APA provisions incorporated therein.