IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL E. COAKER and MARILEE B. COAKER, and the marital community composed thereof, | ) ) ) | No. 82060-5-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | |
| Respondent. | ) ) | |

HAZELRIGG, J. — Michael and Marilee Coaker seek reversal of a decision by the Board of Industrial Insurance Appeals (BIIA) affirming personal liability for unpaid premiums owed to the Department of Labor and Industries by their former business, Mike's Roofing, Inc. They challenge several of the BIIA's findings of fact and argue that the BIIA erred in interpreting the bankruptcy exception to personal liability in RCW 51.48.055(4) to apply only after the bankruptcy proceeding is completed. Because the plain language of RCW 51.48.055 supports the BIIA's interpretation and the BIIA's findings of fact are supported by substantial evidence in the record, we affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Michael and Marilee Coaker[1] founded Mike's Roofing, Inc. in 1988. Mike's Roofing performed roofing and other construction work on residential, commercial, and public works projects. At all times, Michael owned at least fifty percent of the company. When the company dissolved, Michael and Marilee each owned fifty percent of the business and served as president and vice president, respectively. Both spouses were responsible for paying industrial insurance premiums and associated reporting to the Washington State Department of Labor and Industries. Starting in 2007, Mike's Roofing used a third party company to manage its payroll and payment of industrial insurance premiums.

Before 2012, Mike's Roofing was audited by the Department three times for the periods of 1997 to 1999, 2003 to 2005, and 2006 to 2007. In May 2012, three months after the third audit became final, the Department audited Mike's Roofing regarding premiums owed from 2009 to 2012. Michael felt that it was unreasonable that Mike's Roofing was being audited again after such a short time. Mike's Roofing did not provide the Department with any records in response to the audit. Because the Department did not have the records, it estimated the premiums due and concluded that Mike's Roofing owed $480,474.61 in additional premiums for that period. The Department sent Mike's Roofing a notice of assessment on November 14, 2012 ordering it to pay the additional premiums plus penalties and interest for a total of $700,161.95. After reconsideration, the Department reduced the assessment to $579,586.87.

---

[1] For clarity, we will refer to the Coakers individually by their first names. We intend no disrespect.

Mike's Roofing appealed the assessment to the Board of Industrial Insurance Appeals (BIIA). An Industrial Appeals Judge (IAJ) issued a proposed decision and order affirming the Department's assessment. Mike's Roofing did not petition for review from the proposed decision. The BIIA adopted the proposed decision as its final decision on April 13, 2015. Mike's Roofing did not appeal.

After the BIIA's decision became final, the Department assigned Jessica Rubin, a revenue agent, to collect the monies that Mike's Roofing owed to the Department. Rubin contacted Michael in May 2015 and asked if he intended to appeal the BIIA's decision. He responded that he did not and informed Rubin that he would be closing the business. Rubin contacted Michael again and asked if he was interested in a payment plan that would give him more time to pay the assessment. Michael responded, "[D]o you think I am going to pay this?" Rubin took this to mean that he did not intend to pay the assessment. She then filed a lien on Mike's Roofing's bank account and levied $377.63. Because Michael had indicated that he would close the business and did not intend to pay the assessment, the Department issued an order revoking Mike's Roofing's certificate of industrial insurance, meaning that the company could no longer lawfully employ workers. Mike's Roofing did not challenge the revocation of the certificate.

Rubin later learned that Michael had applied for a new business with the Secretary of State. The application listed Michael as the only member of the new company. The Department issued an order charging the new business with successor liability for Mike's Roofing. Michael asserted that he had accidentally listed himself as a member of the new company by signing the wrong line of the

- 3 -

document. He explained that he was trying to help his mother start a new business of which he was not a member. He filed an amended application with the Secretary of State that did not list him as a member of the company. The Department rescinded the order charging the new business with successor liability. Michael performed work for the new business for a year and a half until he sustained an injury.

On January 22, 2016, the Department sent the Coakers a letter informing them that they could be held personally liable for the unpaid premiums owed by Mike's Roofing. The letter requested that they pay the premiums or contact the Department by January 31, 2016. The Coakers did not respond to the letter. The Department then issued a notice of assessment on February 1, 2016 that found the Coakers personally liable for the unpaid premiums, penalties, and interest owed by Mike's Roofing. Through counsel, the Coakers sent a letter to the Department challenging the assessment of personal liability. The Department affirmed the assessment on June 16, 2016. The Coakers appealed the Department's order to the BIIA the next month. Mike's Roofing then filed for Chapter 7 bankruptcy on March 9, 2017.

On September 21, 2017, IAJ Marnie Sheeran heard testimony and argument on the appeal. The Coakers argued that they always paid the premiums they believed were owed, as calculated by the third party company, and therefore did not willfully fail to pay any premiums. They also argued that the exception to personal liability in RCW 51.48.055(4) applied because all of the assets of the corporation had been applied to its debts through bankruptcy. Michael testified

that he did not believe the Department should have audited him in 2012 and that he disagreed with the audit's findings. He denied that he ever deliberately underreported hours, misclassified staff, or underpaid premiums during the audit period. He testified that he understood the BIIA's decision on the 2012 audit to mean that Mike's Roofing owed the Department about $500,000 and that the BIIA's decision became final on April 13, 2015.

On October 27, 2017, Judge Sheeran issued a proposed decision and order finding that the Coakers did not deliberately fail to pay any assessment due, underreport, or report incorrect risk classifications between July 2009 and June 2012. However, Judge Sheeran found that the Coakers had willfully failed to pay premiums owed for the audit period because they made no attempt to pay the assessment after the BIIA's April 2015 order affirming the assessment. The IAJ found that "willfulness is demonstrated" by the Coakers' choice to stop seeking work and close the company and by their refusal to discuss a payment plan with the Department. The IAJ also rejected the Coakers' bankruptcy argument, finding that RCW 51.48.055(4) required the bankruptcy to be fully resolved for the exception to apply.

The Coakers petitioned for review of the proposed decision and order with the BIIA. They attached a declaration from their bankruptcy attorney dated November 23, 2017 stating that the bankruptcy court had issued an order on November 14, 2017 closing Mike's Roofing's bankruptcy based on a bankruptcy trustee's finding that there was no property available for distribution. The petition

for review argued that the exception to personal liability in RCW 51.48.055(4) now applied because the bankruptcy proceeding was finalized.

The BIIA granted review and issued a final decision and order affirming the assessment of personal liability against the Coakers. The BIIA declined to reopen the record to include the bankruptcy attorney's declaration, concluding that the evidence would not affect its decision because it interpreted RCW 51.48.055(4) to require completion of the bankruptcy proceeding before the Department issued the notice of assessment. The BIIA entered findings of fact, including the following:

4. At least as of April 13, 2015, there was no bona fide dispute between Mike's Roofing and the Department concerning whether Mike's Roofing owed a substantial amount of money in unpaid premiums, interest, and penalties.

. . .

8. Mike's Roofing ceased operations in April 2015 and dissolved as a corporation on November 9, 2015. The choice to cease operations was a conscious, intentional, and voluntary choice by Mr. and Mrs. Coaker.

9. Between July 1, 2009, and April 2015, Mike's Roofing had in its possession and control sufficient funds that could have been used to pay the amount owed to the Department in full.

10. Michael Coaker and Marilee Coaker had actual knowledge of the debt owed to the Department and made an intentional, conscious, and voluntary choice to pay other obligations with the firm's funds, and not pay the amount due to the Department for the assessment against Mike's Roofing.

. . .

12. Michael Coaker and Marilee Coaker's failure to pay the assessment owed against Mike's Roofing was willful.

13. The completion of Mike's Roofing's Chapter 7 bankruptcy action did not occur prior to the Department's assessment of personal liability, nor in conjunction with the dissolution of the corporation.

The Coakers appealed the BIIA's decision to the Thurston County Superior Court. The court affirmed the BIIA's decision, ruling that substantial evidence

supported the BIIA's findings and that it did not commit an error of law in interpreting RCW 51.48.055. The Coakers appealed.

ANALYSIS

I.       Determination of Personal Liability

The Department may charge the officers of a company with personal liability for unpaid premiums remaining after a business dissolves if the officers willfully failed to pay the premiums. RCW 51.48.055(1). Failure to pay is willful if it is "the result of an intentional, conscious, and voluntary course of action." Id. The statute also contains an exception: the officer "is not liable if all of the assets of the corporation or limited liability company have been applied to its debts through bankruptcy or receivership." RCW 51.48.055(4). An individual can appeal a notice of assessment imposing personal liability to the BIIA. RCW 51.48.055(5), .131. The individual bears the burden of proof to show that the Department's notice of assessment is incorrect. RCW 51.48.131. The BIIA's review of the issues raised in the notice of appeal is de novo. RCW 51.52.100, .102.

Further appeals from the final decision of the BIIA are governed by the Administrative Procedure Act (APA).[2] RCW 51.48.131; Probst v. Dep't of Labor & Indus., 155 Wn. App. 908, 915, 230 P.3d 271 (2010). Appellate courts review the assessment based on the record before the BIIA. Probst, 155 Wn. App. at 915. Under the APA, the party asserting that an agency action is invalid bears the burden of demonstrating invalidity. RCW 34.05.570(1)(a). The reviewing court shall grant relief from an agency order if it determines that the agency has

---

[2] Chap. 34.05 RCW.

erroneously interpreted or applied the law or if the order is not supported by evidence that is substantial when viewed in light of the whole record before the court. RCW 34.05.570(3)(e).

Courts review challenged findings of fact for substantial evidence, defined as "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" King County v. Cent. Puget Sound Growth Mgmt. Hr'g Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000) (quoting Callecod v. Wash. State Patrol, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). The court views the evidence in the light most favorable to the party that prevailed before the BIIA. Kittitas County v. Kittitas County Conserv., 176 Wn. App. 38, 48, 308 P.3d 745 (2013). Accordingly, we do not reweigh the evidence, and we accept the factfinder's credibility determinations and assessment of the weight to be given to reasonable but competing inferences. Id.

We review the BIIA's legal conclusions, such as construction of statutes, de novo. Probst, 155 Wn. App. at 915. But we give substantial weight to the BIIA's interpretation of the statutes it administers. Id. When interpreting a statute, our goal is to ascertain and carry out the legislature's intent. Gorre v. City of Tacoma, 184 Wn.2d 30, 37, 357 P.3d 625 (2015). To do so, we begin with the plain language of the statute. Id. at 36–37. We do not read individual terms in isolation:

> The meaning of words in a statute is not gleaned from those words alone but from "all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another."

Burns v. City of Seattle, 161 Wn.2d 129, 146, 164 P.3d 475 (2007) (internal quotation marks omitted) (quoting State v. Krall, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994)). We assume that the legislature does not intend to create inconsistent statutes, and we read statutes together "to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" Filo Foods, LLC v. City of SeaTac, 183 Wn.2d 770, 792–93, 357 P.3d 1040 (2015) (alteration in original) (quoting Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 588, 192 P.3d 306 (2008)).

A.  Application of RCW 51.48.055

The Coakers contend that the BIIA misinterpreted RCW 51.48.055. Subsections (1), (2), and (4) of the statute set out the general principles governing the imposition of personal liability for unpaid industrial insurance premiums:

(1) Upon termination, dissolution, or abandonment of a corporate or limited liability company business, any officer, member, manager, or other person having control or supervision of payment and/or reporting of industrial insurance, or who is charged with the responsibility for the filing of returns, is personally liable for any unpaid premiums and interest and penalties on those premiums if such officer or other person willfully fails to pay or to cause to be paid any premiums due the department under chapter 51.16 RCW.

For purposes of this subsection "willfully fails to pay or to cause to be paid" means that the failure was the result of an intentional, conscious, and voluntary course of action.

(2) The officer, member, manager, or other person is liable only for premiums that became due during the period he or she had the control, supervision, responsibility, or duty to act for the corporation described in subsection (1) of this section, plus interest and penalties on those premiums.
. . .

      (4) The officer, member, manager, or other person is not liable if all of the assets of the corporation or limited liability company have been applied to its debts through bankruptcy or receivership.

RCW 51.48.055.

The parties disagree on the point in time at which the officer's personal liability is determined. The Coakers argue that the language of subsection (4) stating that the officer "is not liable" if the company's assets "have been applied to its debts through bankruptcy" indicates that the bankruptcy exception applies if the company's assets have been distributed to creditors through a bankruptcy action <u>at the time the officer asserts the defense</u>. The Department argues that the first clause of subsection (1) indicates that "it is the corporation's dissolution (or abandonment or termination) that triggers the corporate officer having liability for the corporation's unpaid premiums, penalties, and interest."

Here, the plain language of the statute when read as a whole supports the Department's reading. The language of subsection (1) shows that an officer's personal liability for unpaid premiums is determined "[u]pon termination, dissolution, or abandonment" of the company. Subsection (2) limits the officer's liability as described in subsection (1) by stating that the officer is responsible for the premiums that became due under the officer's tenure. Subsection (4) then creates an exception to subsection (1), stating that the officer "is not liable" if the company's assets "have been applied" to its debts. Because this is an exception to the general rule detailed in subsection (1), it follows that the officer's liability, or lack thereof, is assessed at the same time as specified in subsection (1): "[u]pon termination, dissolution, or abandonment" of the company. The specification that

this exception applies only if the company's assets "have been applied to its debts" indicates that this application of assets to debts must have already been completed at the time the officer's liability is assessed. Because the BIIA's interpretation of RCW 51.48.055 comports with the plain language of the statute and we give substantial weight to this interpretation, the Coakers have not shown that the BIIA erroneously interpreted the law.

### B. Findings of Fact

The Coakers specifically assign error to six of the BIIA's findings of fact. First, they challenge the finding that the there was no bona fide dispute that Mike's Roofing owed a substantial amount in unpaid premiums, interest, and penalties as of April 13, 2015. As the Department points out, the BIIA's April 2015 decision was final on the date of issue because the Coakers did not petition for review of the proposed decision and order, therefore giving up their right to appeal the decision. See RCW 51.48.055; RCW 51.48.131; RCW 51.52.104. The Coakers appear to concede this point in their reply brief, stating:

> Although the Department is correct its assessment against Mike's Roofing became final when the Board issued its April 13, 2015, order adopting the unappealed proposed decision and order (Resp. Br. 36), both the Board and the Department treated the April 13 decision as appealable. (See FF 2, CR 10 (noting "Mike's Roofing did not appeal" the April 13 order); CR 555 (Department asked Mr. Coaker "on May 6, 2015. . . . if he [was] going to appeal the Board decision"))[.] In any event, a one-month difference in finality is immaterial given Mike's Roofing could not have paid the nearly $600,000 assessment in either April or May of 2015.

The Coakers state that they "have always acknowledged that, as of April 2015, Mike's Roofing owed additional premiums." Their argument appears to concern

the BIIA's willfulness conclusion rather than this finding of fact. Substantial evidence supports this finding.

Next, they dispute the BIIA's finding that Mike's Roofing ceased operations and dissolved on November 9, 2015 by the Coakers' conscious, intentional, and voluntary choice. The Coakers argue that their decision was not voluntary because they were unable to pay the assessment and knew that they would not be able to continue operating. Again, this argument goes to the court's determination of willfulness rather than a genuine dispute of fact. Despite their assertion that they felt they had no other option, substantial evidence supports the finding that the Coakers made the choice to wind down Mike's Roofing.

The Coakers also challenge the finding that Mike's Roofing had sufficient funds in its possession and control between July 1, 2009 and April 2015 to pay the amount owed to the Department in full. The records submitted by the Department showed substantial revenue from 2009 to early 2015. There is no indication that Mike's Roofing could not have paid the additional premiums required for that time period. Although Michael testified that the company did not have cash reserves in April 2015, the Coakers produced no accounting of the disposition of the company's revenue up to that point that would explain the lack of funds. There was substantial evidence from which the BIIA could find that Mike's Roofing could have paid the Department.

The Coakers assign error to the BIIA's finding that they had actual knowledge of the debt owed to the Department and made "an intentional, conscious, and voluntary choice" to pay other obligations rather than the amount

owed to the Department. Michael testified that he knew about the debt owed to the Department. Rubin testified that she had reviewed documents from the Department of Revenue showing that Mike's Roofing had income in 2015 and 2016 and indicating no outstanding balance due to the Department of Revenue and the Employment Security Department, despite the outstanding premiums due to the Department. Substantial evidence supports the finding that the Coakers knew of the debt owed to the Department and chose to pay other obligations.

Next, they challenge the BIIA's finding that their failure to pay the assessment owed to the Department by Mike's Roofing was willful. As noted above, willful failure to pay is defined in RCW 51.48.055(1) as "the result of an intentional, conscious, and voluntary course of action." The Coakers argue that their failure to pay could not have been willful because they paid the premiums that they believed were due at the time and did not have the funds to pay the assessment in April 2015. However, this argument ignores the evidence from Rubin that the Coakers made no attempt to pay any part of the assessment and refused to discuss a payment plan for the additional premiums. Willful failure to pay does not require malice or bad faith, only intentional, voluntary action. Substantial evidence supports this finding.

Finally, the Coakers dispute the BIIA's finding that Mike's Roofing's Chapter 7 bankruptcy action was not completed before the Department's assessment of personal liability, nor did it occur in conjunction with the company's dissolution. Again, the facts of this timeline do not appear to be disputed, but rather the interpretation of the point at which personal liability is assessed. In accordance

with the conclusion above that the Department's assessment of personal liability is determined at the time of dissolution, substantial evidence supports the finding that the bankruptcy action was not completed before the assessment or in conjunction with the company's dissolution.

II.     Attorney Fees on Appeal

The Coakers request an award of attorney fees under the equal access to justice act (EAJA), RCW 4.84.340-.360.  The EAJA provides that "a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust."  RCW 4.84.350(1).  A party prevails if they obtained relief on a significant issue that achieves some benefit that they sought.  Id.  Because the Coakers have not prevailed in this action, we decline their request for an award of attorney fees.

Affirmed.

WE CONCUR:

- 14 -